Breakwater Commons Association v. Empire Indemnity. We'll have counsel for the appellant come back up. Why don't you address that that last issue and then what I think would be most helpful is to, with regard to both Breakwater and Creekside, is to address the issues that are maybe specific to those condominiums that are maybe different than Positano, okay? Yes, and what's different than Positano and Breakwater is we didn't, in Positano there was a 12 out of the 20 buildings. We didn't argue that but we'll let the briefs speak on that issue. Breakwater was obviously a Hurricane Irma claim just like the rest of them and two years later or a year and a half later there was a claim for 27 million dollars and obviously there was a motion to compel appraisal but what's interesting about Breakwater is that there was a lawsuit filed and the initial complaint had a breach of contract for not going to appraisal as well as a breach of contract for not paying enough on the claim, right? Now you could you could sue for breach of contract for not paying enough on the claim. You don't need appraisal which was another issue here that normally to get equitable relief under the law of federal equity you need to show that there's no adequate remedy at law and there was no real showing of that. Wasn't count one a deck action? It was a deck action, you're right, and it was trying to declare the rights to appraisal. I filed a motion to dismiss. They withdrew. And they withdrew and if you look in the record right after they withdrew I put in response to that withdrawal saying right now the only thing that's being adjudicated here is the underpayment being alleged against Empire. That's not a hundred percent true. In other words, the count two still include, count two is two breach of contract theories. One is what you just said, right? But if you look on paragraph 41 it says, quote, rather than little Roman numeral one, honor the insured's demand for binding appraisal in accordance with the policies appraisal clause and or two, and it's the coverage issue, the insured unilaterally and wrongfully breached the policy by to extend those, meaning both, contractual benefits. In other words, they're saying that they have a contractual remedy for the the breach of the appraisal clause, right? I didn't, given that the withdrawal of the declaratory act that specifically addressed appraisal, the remedy in the second count clearly was for the underpayment of the claim. I would say they threw that in there but it's not, they were not claiming. The other issue, I don't know how you read it any other way, but but isn't there a damage remedy for, so this goes to the question your opposing counsel asked that I asked you and and that was part of his his end, which is, to what end is all of this? And the answer is, there is damages that result from a failure to appraise, is there not? Well, money damages or some other, well we we could, we could go to the Supreme Court and, well, here's the thing, that would be a, here were the, here's the issue, your honor, the Supreme Court of Florida, the damages caused by the refusal to, there would be nominal damages, really, it'd be nominal wouldn't they? But the Supreme Court of Florida has said that consequential damages, sort of a consequential damage in Manor House, you can't recover for the damages for breach. It is speculative, it is, from a damage calculation it may be difficult to, item of damages because you didn't do the appraisal. There could be some method of saying, you know, there was some delay. I speak for myself, I can't imagine it. Right, that's why Manor House, the Supreme Court in Manor House said, how you would instruct a jury, for example, they'd sit there and flip a coin. Right, no, your point's well taken, your honor. The the Manor House case says that the measure of damage in the breach of contract for, not for, based on an insurance contract, is the amount owed on the contract, the the amount insured, and they threw out consequential damages as a basis for recovery of damages under the policy. So when you look at the policy, it essentially said your damages are whatever the policy says you're owed, and that's it. So I think that asking for money damages from an appraisal is sort of a consequence. When the object of this policy is a contract for payment of money, fundamentally that's the measure of damages for breach. So, but your point's well taken on that. What about the pre-judgment interest? So you're right that you ultimately would get a damage that would be equivalent to what you would have gotten an appraisal under the coverage portion, but you also would have had that three years earlier before having to go through litigation. There's some there's some costs involved in that, isn't there? There is a, this is the tension here in Florida law, because we've got case law that talks about appraisal and the outcome of appraisal awards. There's a Southern Southern Flapjacks case out of the 11th Circuit where they said that pre-judgment interest runs from the date the money is due under the policy after an appraisal award. So it could be 30 or 60 days. So, so we have that, but your Honor just raised the issue of what about, you know, three years later if they had gone forward with appraisal earlier, then perhaps there wouldn't be, there would be some entitlement to pre-judgment interest. If the breach was, if in April of 2011, or here it's 2017, I asked for an appraisal and I am found to be entitled to it at that time, and you didn't do an appraisal with me until, you know, I was ultimately awarded at trial three years later, I'd be entitled to the three-year difference in the money that I would have had for my apartment complex, would I not? There could be a, an argument fashioned that way, depending on the facts, circumstances in the case. The quirky thing about appraisal here is that, again, it's, it's nestled in the conditions section of the policy. Conditions. It's not really the, the object of the policy, ultimately. And so the courts in Florida have said, well, you know, there's, it's in there and you've got to go forward if it's requested. But if you look at the, the purpose of appraisal, ultimately it's to determine a liquidated amount under the policy. And not to determine who breached or anything like that, because an insurance contract fundamentally is an agreement to agree in the future, because we can't possibly predict that a storm is going to hit and how much that is going to be. And because, unlike other contracts where you have a price, there is no price because nobody can predict the future. So they put in this appraisal provision to essentially set a price. That's what makes appraisal different than arbitration, which resolves accrued causes of action. It, that's what it's, that's why it's completely distinguished. Can I bring this conversation back to jurisdiction? Yes. So, given that we, all we have is, at best, nominal damages and then I think you and I have agreed that possibly a claim for some sort of prejudgment interest, that that's it. How can we say on a money, any sort of money damages issue, that we have the kind of impact or consequence or whatever is required under any formulation of our test under 1292A1? You know, ultimately Your Honor, I think the courts and when you've seen... Breakwater's your weakest case for jurisdiction, is it not? I don't think so, Your Honor. I think any time a court compels action of a party and that action has, and we're gonna, I don't want to get into the the standard, but that action, and just using the standard I've quoted, direct or irreparable, not harm, impact, that that's enough to get jurisdiction. And you'll find, and I think the distinction is, maybe with other cases is, this is compelling action, which is a significant thing under federal equity law. So, I think they're all pretty much the same in terms of our ability to appeal under 12, I'm at 28 U.S.C. 1292A1. But I think ultimately, when I, when we're talking about this issue concerning, you know, getting back down into some of the arguments that we've had, in this particular case, we've raised the issue, and this is worth discussion as well, we've raised the issue that, for example, the court is going, is not providing any prohibition, for example, on appraising our replacement costs, which is a significant issue here, because right now, in Breakwater, although it's not a record, they've replaced the roofs. But before they did the motion to compel appraisal, there was no proof that there were actually repairs done to any of the properties. So if there were no repairs done to any of the properties, the right to recover for replacement costs didn't accrue, and so sending it to appraisal to appraise replacement costs would be a moot issue, unless an elected ACB, haven't they elected actual, that's that's a different issue. But my point is that, seems to be that might be something that could go to appraisal, right, but the issue of replacement costs and and these other issues. We don't have that, I mean that's entirely speculative. I mean, what we have is, go appraise, go do what the contract tells you to do. The appraisers know what their job is, most of them are in the business. They're gonna come back with an amount of money that's consistent with the contract, and then whatever defenses are left can be litigated, right? That's the issue, your honor, is the assumption that the appraisers, these are not arbitrators, we don't have a right to become involved in the appraisal. Classic, but I don't know if it's correct with respect to appraisal, because there's no right, as the Mango Hill versus Citizens case said, if you look at that case, it's chaos. I happen to be on the case, and in that case, the court gave a very good primer on really what appraisal is and isn't, and there's no accountability. In 2002, the Supreme Court said that... No, but you wrote it in the contract, not you, your client. Of course, it's in the contract. So I have to say, how is that of any concern to the courts? If there is a due process problem later on, you could bring that up. If there is a problem, those defenses are allowed to it, but we're talking about the threshold of, just go, you pick one, you pick one, here's a third-party neutral, here's the number, let's go litigate. Your Honor, as the court said in the Army Corps of Engineers case, the fashioning mandatory injunctions like this should be done with great care, and we have blue pencils in the context of non-competes, where the court exercises its equity power to blue pencil in reasonable restrictions on what it's actually forcing someone to do, or... But again, you're talking about something that your client specifically chose to include in its insurance policy. Yes. You could have decided, instead of having appraisals, you could come up with a new novel idea, which is, we're going to litigate before, instead of an appraisal, we're going to have, we're going to go to a panel of three arbitrators, okay, different, or we're going to litigate it in, in state court, and it will only be in state court. Your Honor, ultimately, it's, it's the fourth, the court's power of equity to tailor its order compelling this kind of mandatory injunction, notwithstanding the... Let me ask you a question about, about it being an injunction, because do we apply, you would agree that under Florida law, that this, an appraisal, is not an injunction? Well, I, I don't know for, I don't think the Florida case law has addressed it square on. There has been a case, Nasr-Anpur case, that said it could be either, which is a little odd, that something can be a basis for specific performance. I think what Judge Legault is asking, and it's, it's a question I have too, for purposes of appellate jurisdiction, it is clear under Florida law, is it not, that an order compelling appraisal is not injuncted? I, I have, I believe that there was one appellate case, and I'll stand corrected. I thought there was one appellate case in Florida that did treat it as injunction, but, and... I think there's multiple cases of Florida cases that treat it as not an injunction. Right, and so it's just, the issue has not been briefed. That's, that's the whole problem we have, is that we have lots of case law that are, we have Southern District cases that go, that agree with us, and we have cases outside the state. Do we apply state substantive law on what constitutes an injunction, or do we apply federal common law? We, we have to apply federal common law, the, the, or federal equity law, because, well, it's complicated, because ultimately, the federal court gets its power from the Federal Judiciary Act, and ultimately, when you look at, and there's scholarship on this, the federal court gets its federal equity, uses the Brit, the High Court of Chancery of England for its determination of what inequity it needs to do, and it cannot, because it's fundamentally procedural, especially as encompassed by Rule 65, it's not governed by Florida law on the issue of, it doesn't borrow from Florida, Florida's equitable principles in, in this particular instance, when we're talking about an Article III federal court. It's, there's some scholarship on this that I'm, I'm certainly not qualified to . . . Counsel, you'll have your three minutes . . . Okay. . . . for Ruddle, and you have a whole other argument to talk about some of these issues. Good morning again, may it please the Court. Let me start where that ended. I think the federal rule, the Florida Rules of Appellate Procedure answer the last set of questions, which is, historically in Florida, you weren't, you were not able to appeal a determination that you had, or couldn't, either way, go to appraisal. The appellate rules were amended about ten years ago. If it was injunctive in character, it would have always been appealable under the interlocutory rules. It's just never been the law of Florida. There is one stray case that, as counsel acknowledges, says, well, maybe you could do it as an injunction, maybe you could do it contrary. I want to talk about some procedural bars to the arguments that are being made here, and I want to reinforce one I already discussed, which is . . . Could you address first what the differences are between the two cases, Positano and Breakwater, in terms of the facts? Only the pleading difference that the . . . I think the only one that really matters is the pleading difference that Judge Luck identified. We clearly asked for the appraisal remedy in both sets of pleadings, so I don't materially think they're different. The Court thinks . . . I'm happy to respond to any questions directly in that regard. When the . . . Why would draw? Why would draw count one? Remember, we said it was belt and suspenders in the prior oral argument. We thought we had a belt, is the answer. The Court identified it's paragraph 41, is the belt. Does it not look like you're trying to avoid Rule 65 or going through something greater than seeking a motion to compel? Arguments over a motion to dismiss take time. We wanted to get to appraisal as fast as we could. That's the strategy reason. That's the work product reason. The procedural bars, if in fact this was supposed to be injunctive, as Judge Joflat noted, it's one of the rare instances . . . I don't get to go to federal hearings very much in Fort Myers, but the one of the sets of hearings you actually get are for injunctions. It's mandatory under the rule. They never objected that this matter was being heard without a hearing, and the matter was assigned to the magistrate. You did have an oral argument. You were both present weren't you? Absolutely not. It was on paper. All this was done on the papers. When the magistrate was assigned to this, if they thought this was injunctive in character, this is one of the limited items that magistrates can't handle are injunctions. They didn't object to either of those. There's two, it seems to me, procedural bars to that argument, even if the Court is convinced that this . . . They didn't object though when the order came out though, did they not? Yes, but they would have . . . my point is of course they would have had to object before . . . they objected . . . they took exceptions from the magistrate's ruling. If that's the question, the answer is yes. One of those was that given the nature of this, the magistrate couldn't have done what it did. They should have told the magistrate that before the judicial laborer involving that was asked is my point. That's how you would properly preserve your appellate rights. Relative to that paragraph 41 issue, I wanted to speak very briefly to this. It's important to remember that there is that retained rights provision in the policy. Even if we go to appraisal and there's a determination about the scope and amount of loss, there would at least nothing improper . . . What would they be? Having to do with damages? I'm going to frame it the way they would frame it. No, they would say whether law and ordinance applied under some award of the appraisal panel or whether the RCV was actually expended. I'm trying to . . . Aren't there coverage defenses that they alleged as affirmative defenses in their answer? Yes, some of them may. I don't want to . . . I'm not conceding anything, but those are the kinds of things that can be the subject of jury . . . Anything to do with the way in which the appraisal was handled, the affirmative defenses? I think that's a better way to frame it, Your Honor. If there were some defenses unrelated to the scope of the appraisal panel's duties, they might have a right to a jury trial. Yes, but it would have nothing to do with what happened in the appraisal. That's my point. I'm agreeing with the court. I'm saying if there are issues outside of the appraisal panel's determination . . . If I'm wrong that it had nothing to do with . . . it's a silly . . . the appraisal mechanism is silly. That's correct. It would be a . . . Do it and then unravel it. It would be a meaningless waste of time. Inefficient. That's correct. I would add, as the district court noted, we have the right to both seek the appraisal and preserve our jury trial right as to any issues that might be tried. That's not a waiver to the extent that that's what I was also arguing today. I think the court . . . Judge Lagoa . . . What would be your jury trial rights to be preserved? Again . . . What would you try before a jury? It'll be our . . . Appraisal and there's a number. Right. If there . . . That's the cost. Right. Nothing as to the number. That will be decided by the appraisal panel. I'm agreeing with the court. The number's already dead. Right. Now, what are you going to send to a jury? I think in most cases there won't be anything for a jury to decide. I don't want to sidestep that. Well, what conceivably could you send to the jury? Whether one of these exclusions that they claim applies to some element that the appraiser's found. That'd be a legal question. It can be. It could be a fact question. I can see circumstances under which it'd be a fact question where the experts dispute what that issue was. In state court, sometimes we go to these appraisals and there can be a jury trial. As a practical matter, and this should be the most important thing, these appraisals, and the reason they don't want to go if they were being honest here, is they know once that amount and scope of loss is decided, that's most of the ballgame. They're trying to keep us from the ballgame. I mean, our right to go to this alternative dispute resolution mechanism which we asked within a year of this storm, we're now five years away, lies in tatters. We were promised a prompt resolution. As Judge Lugoa's question begged and counsel noted, these appraisal provisions are not like, this is not like empire's creation. You can go back to the 1800s and find these provisions. Ironically, the courts were more skeptical of arbitration and appraisal at the beginning of the 1900s. The court system has long resolved its concerns over whether these mechanisms could be fair for a couple of reasons. Structurally, we like resolving matters out of court, reducing litigant costs, but secondarily, and I think Judge Lugoa or Judge Luck, I don't remember who asked the question, they drafted the policy and if they wanted more procedure, they could have it. I'm an arbitrator in these cases. There are commercial property policies that have arbitration provisions that are more formalized. I arbitrate these cases all the time, both as an arbitrator and as a litigant. There's nothing about this policy that they wrote that they've actually, other than musing about it in their briefing, have said, you can't enforce this provision against us. It violates our due process rights. That's not pled anywhere. So it makes no sense to let that tail wag the dog of whether we're entitled to this process that, again, they put in the contract. Similarly, there are commercial insurance policies that have no appraisal provision or ones, and that's really what they're trying to do with this process that we're in, that are bilateral, where both parties have to agree. Functionally, Empire, which is a subsidiary of Zurich, they're 150 years old, one of the oldest insurance companies in the world, is trying to say here, we're not going to appraisal with you unless we want to because their position is we're caught between the Silla and Charybdis. We had to do it as an injunction, but if we try to do it as an injunction, we can't meet the elements. To the extent that we were entitled to a trial or a hearing, as has been suggested in some of the discourse here today, they didn't request that, ask for that, preserve that, and if we had it, the result would be the same for the reasons I've already said. All of the elements necessary to support sending this case to appraisal exist, and they're not in dispute. And to be clear, if you were in Florida State Court, the appraisal would have happened already. Right, and it seems to me that's a humongous federalism problem. If eerie is to be given its course, I understand procedural rules can be different. I see Judge . . . I'm not convincing Judge Luck on this point, but it can't be that by Empire cherry-picking the venue they go to, that they get a better result. How many summary judgments were granted in federal court that would never have been granted in state court? Thousands? You're asking about the switch in the summary judgment rule? I'm asking about before the switch in the summary judgment rule. Thousands. I think that we all litigate in insurance. It's undisputedly true that the change in the summary judgment rules had an effect. I don't see it would have had an effect. If that's not an eerie problem, that judgment itself is not entered, then the procedural mechanism by which you assert appraisal, not the result, but the procedural mechanism, is an eerie problem. You may win, but to me, I just don't see that as a convincing argument. I want to address your question dead on. As to most of the issues that plague us in insurance cases, the court is right. It was extraordinarily difficult for either party to get summary judgment, under the old rule particularly. But on this issue of if you had to bring these cases in front of trial judges, in my jurisdiction where there have been hurricanes, we just got hit with Ian, I'm from Fort Myers, so this all happened near my home. I have no doubt that if the court said that summary judgment was the standard, it would have been granted in almost all these cases. Only ones I see there might have been an issue in it. What would be the issue for summary judgment? I still haven't figured it out either. Oh, I can't understand what it would be. I have the same difficulty the court does, as you might imagine. What would be the issue for summary judgment? What are the factual positions that the court has now got to decide whether there's a dispute of fact decided as a matter of law? So what would it be? The only one I could conceive of, because it will never be in dispute that there is a policy. Sometimes the carrier takes the position they've outright denied the loss. That's part of their position here. We think that's controlled by the Merritt case that my partner wanted to— That would become a legal question. I would think so, too. But the court may recall I mentioned the way the state court system handles this is if there is a dispute over the compliance with the conditions preceding, like we didn't give them some documents or show up for examination under oath, the court holds an evidentiary hearing and determines whether there was substantial compliance with the conditions. That's not really our issue in any of these appeals. Their briefing is not claiming we're not in compliance. They're not claiming that in any of the cases. That's correct. So that's the kind of thing I could see that happening, but nothing that relates to our case. But that would be simply a bench trial to determine whether or not the conditions necessary for the course of order have been complied with, right? That's correct. That's how it's handled in state court, pretty much as the court has suggested through both of these oral arguments how it would be handled. We don't get hearings in the Fort Myers Division. I would have been happy to go to a hearing in person if that was what either the magistrate or either of our judges had said. I've been to one hearing in my entire time and it was an injunction hearing. That's the culture of the Fort Myers Division. I get hearings when I come up to Jacksonville in federal court. All the jurisdictions are different. If Empire, I'll close, if Empire is to be believed, there's literally no mechanism by which we can enforce the appraisal provision at issue in this case. That can't be the law of either Florida or this court's procedural rules. Unless the court has any questions, we'd ask that the court affirm the trial court orders compelling appraisal in these cases or determine there was no jurisdiction to be here in the first instance. Thank you, Counsel. Thank you, Your Honor. Counsel, you have your three-minute reply. Mr. Caceres, I want to ask you a question. Explain to me how exactly an insured is supposed to have an appraisal process if under the contract your company says if there's an issue, there's a dispute, we will have an appraisal process. I have a house. I have a leak. And I'm now demanding that there be an appraisal. You haven't denied coverage. How would I go about doing that in federal court? Your Honor, I think the way that you would do that first, you would plead breach of contract and say normally that they denied my claim or accepted partial coverage for the claim, but they underpaid me. And I asked for appraisal, and they denied my request for appraisal. That would be the basis for the breach to get to the remedy. To resolve the basis for the breach, you'd have to file either a summary judgment because you're resolving a breach of contract, which presumably is a substantive right, which presumably has to be adjudicated. Or you could go forward with a bench trial, I guess. But the remedy would be something that would be determined by the court and how to fashion that remedy ultimately as a result if in fact the injunctive relief, which we say, if that test is in fact met. I'd be remiss in not citing a couple of cases where, for example, the Anoushvar v. Lexington case. This court looked at a complaint for compelling appraisal and applied equitable principles to determine whether or not the lower court below was correct in denying and dismissing the case. There's also the Parkway Baptist case, Southern District, where the courts expressed doubts that the plaintiff could prove that there was no adequate remedy at law. This is not an odd position here. When they frame the contract in the way in which they do and they call for an appraisal, in a way they're saying there isn't an adequate remedy outside, before a jury. Do you understand? On the legal side, these contracts, as I see it in a simple sort of a way, is this. There's coverage. There's an insurance policy and there's coverage. And one way of solving the loss is you just have a jury trial. Put on the evidence about the loss. It falls within the coverage of the policy and you get a verdict. The other way is one or the other of the parties, this is bargained, decides they want to have an appraisal. We're not going to do this first option. We're going to have an appraisal. And they're, in effect, saying that's the way you have to do it because there's not another remedy. It's a second way of solving the insurance problem. Your Honor, the test is whether or not there's an adequate remedy, not the equivalent remedy. The only adequate remedy would be damages. That would be inadequate. We've already been through that. There's no damages that you could award for failure to have an appraisal. I speak for myself. Right. That's the means to the end is due to the appraisal because you're ultimately trying to get money under the contract. That's why we believe, as other courts have contended, that it's an adequate remedy. Thank you, Your Honor. Thank you, counsel. We're going to hear from you again. And thank you, counsel. Thank you, Your Honor.